IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| TERRI WESTBROOK, | * | |
| Plaintiff, | * | |
| v. | * | CIVIL NO.: WDQ-05-2069 |
| BOARD OF EDUCATION OF BALTIMORE COUNTY, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Terri Westbrook sued, *inter alia*[1], the Board of Education of Baltimore County ("the Board") for sexual discrimination, sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act[2] ("Title VII").[3]

Pending is the Board's motion for summary judgment as to the remaining Counts (I, II, and IV) and Westbrook's request for punitive damages. For the reasons discussed below, the motion will be denied as to Counts I, II and IV, and Westbrook's punitive damages claim will be stricken.

---

[1] Defendant Baltimore County Public Schools ("BCPS") was dismissed from the case on January 20, 2006.

[2] 42 U.S.C. §§ 2000e et seq. (2005).

[3] On January 20, 2006, the Court dismissed Count III--Employee Retirement Income Security Act; Count V--Discrimination under Maryland Law (Md. Code Ann., Art. 49B (2005)); and Count VI--Intentional Infliction of Emotional Distress.

1

I.  Background

Westbrook was employed as a "Clerk IV, Fingerprint Technician" in the security department of BCPS from May 1993 until December 2002.  Compl. at ¶¶ 13-14.  Westbrook has alleged that Charles Jenkins, a co-worker, sexually harassed her on at least two occasions between June 2000 and February 2002.  *Id*. at ¶ 17.

In March 2002, Jenkins became a supervisor and allegedly harassed Westbrook about her job performance.  *Id*. at ¶ 23.  On March 25, 2002, Westbrook was placed on administrative leave without notice.  *Id*. at ¶ 24.  On April 22, 2002, Westbrook was recommended for termination for alleged insubordination and gross misconduct.  *Id*. at ¶ 25.  On December 6, 2002, BCPS terminated Westbrook, and the Board affirmed the termination.  *Id*. at ¶¶ 26-27.

In September 2002, Westbrook filed a charge of discrimination with the Maryland Commission on Human Relations.  *Id*. at ¶ 9.  The Equal Employment Opportunity Commission issued Westbrook a right to sue letter on April 26, 2005.  *Id*. at ¶ 10.  Westbrook filed this action on July 27, 2005.

II. Analysis

The Board has moved for summary judgment on the remaining counts, arguing that Westbrook has failed to establish a prima facie case of: (1) discrimination on the basis of sex; (2) sexual

harassment based on an abusive or hostile work environment; and (3) retaliation.  Westbrook's response focuses on the harassment Jenkins directed towards her and then argues that the Board's proffered reason for her termination was pretextual.

A.   Standard of Review

Under Rule 56(c), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must view the facts and reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The opposing party, however, must produce evidence upon which a reasonable fact finder could rely.  *Celotex*, 477 U.S. at 317.  The mere existence of a "scintilla" of evidence is insufficient to preclude summary judgment.  *Anderson*, 477 U.S. at 252.

B.   Sexual Discrimination/Harassment

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any

3

individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This gives rise to discrimination actions in situations in which an individual is subjected to an adverse employment decision (i.e. failure to hire or discharge) because of her sex. In addition, as the workplace environment is one of the "terms, conditions, or privileges of employment," individuals have a cause of action if forced to work in a hostile workplace. *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).

Counts I and II, titled, in the Complaint, as actions under Title VII based on "Sex (Harassment) Discrimination" and "Sex Discrimination," respectively, state the same cause of action. In Count I, Westbrook alleges that she was subjected to "a hostile work environment because of her sex . . .," Compl. ¶ 29, and in Count II, she alleges that she was subjected to "a sexually offensive and hostile work environment . . .," Compl. ¶ 45.

Moreover, in her Response Memorandum, she, in effect, argues that the claims are the same; in fact, she states that they require proof of the same four elements. Response Mem. 18, 23. Indeed, as the source for the prima facie case for the claim she refers to as "sexual harassment," she cites *Ocheltree v. Scollon*

4

*Productions, Inc.*, 335 F.3d 325 (4th Cir. 2003), which, in stating the four elements, refers to the claim as one for "sexual harassment in the workplace." Response Mem. at 18; *Ocheltree*, 335 F.3d at 331. Subsequently, as the source for her "hostile work environment" claim she cites *Hartsell* for the same four elements. Response Mem. at 23.

Indeed, the argument in her response regarding her "sexual harassment" claim centers entirely on the alleged harassment to which she was subjected and whether the Board knew of it; she does not argue that she was fired because she is female. Response Mem. 19-22. Her argument is tailored to the four elements of a hostile work environment claim, not an adverse employment decision discrimination claim. *Compare Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (the prima facie case of sex discrimination requires the plaintiff to "show that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class.") *with Hartsell*, 123 F.3d at 772 (the prima facie case for a hostile work environment claim requires a plaintiff to show: "(1) that [s]he was harassed because of [her] sex; (2) that the

harassment was unwelcome; (3) that the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer.").

Moreover, she asserts that the same underlying facts argued with respect to her "sexual harassment" claim support the hostile work environment claim.  Response Mem. 23.  The only reference to her discharge is made in response to the Board's proffered reason for her discharge.  As the allegations of Count I and II and the argument in her Response Memorandum focus on hostile work environment and omit discriminatory discharge, Counts I and II will be treated as one claim for a hostile work environment.

To determine whether a work environment is hostile or abusive a court must consider the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted."  *Conner v. Schrader-Bridgeport Intern.*, Inc., 227 F.3d 179, 193 (4th Cir. 2000) (*citing Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  The claim requires both an objective (the reasonable person) and subjective (the victim) belief that the behavior created a hostile work environment.  *Harris*, 510 U.S. at 21-22.

"Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citations omitted). Application of these standards will ensure that Title VII does not become a general civility code and does not provide a cause of action for "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." *Id.* (citations omitted).

The Board argues that no reasonable jury could find that the evidence offered by Westbrook created a hostile work environment because the conduct alleged was neither severe enough nor frequent enough. The evidence suggests, however, that sexually inappropriate comments were frequently made by Jenkins. Response Mem. Ex. 26 at 10 (Westbrook Deposition) (stating that Jenkins made many comments each day); *id.* at 15-16 (in 2000 Jenkins began making comments about her uniform's pockets everyday); *id.* at 17, 19 (Jenkins commented that he would like to polish her badge with it still attached to her shirt above her left breast); *id.* at 20 (Jenkins made sexually inappropriate comments about her pockets and her badge "several times a week, several times a day" in the hallways); *id.* at 27 (Jenkins made the badge polish comment again); *id.* at 35 (Westbrook could not go anywhere without Jenkins saying something; it was everyday). In July 2001, in

7

particular, Jenkins "put [his hand] under [Westbrook's] breast and went over [her] breast and grabbed [her] badge."  *Id*. at 28-29.  Viewing the facts and reasonable inferences drawn therefrom in the light most favorable to the plaintiff, the content and frequency of Jenkins comments and the physical touching are sufficient evidence for a reasonable jury to find the conduct unwelcome, based on her sex, and actionably severe or pervasive.

The Board argues that *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) controls the analysis for imputing Jenkins's liability to the Board  *Burlington* involved harassment in which a supervisor created a hostile work environment by making explicit threats to alter a subordinate's terms or conditions of employment.  *Burlington*, 524 U.S. at 754.  In particular, *Burlington*'s analysis was limited to harassment by a *supervisor* of the plaintiff and in such a case the standard for imputing liability is different than when a co-worker harasses.  *Howard v. Winter*, 446 F.3d 559, 565 (4th Cir. 2006).  Indeed, when "an employee is sexually harassed by a coworker . . . the employer may be liable only if it knew or should have known about the harassment and failed to take effective action to stop it."  *Id*. (citations omitted).

During the sex-based harassment, Jenkins was not Westbrook's supervisor and there is no allegation that Jenkins's verbal and physical harassment involved the *quid pro quo* threats at issue in

*Burlington*.  In November 2000, William Downs, a co-worker, and Donald Kremple, the executive director of the facility at which Westbrook worked, were present in Kremple's office when Jenkins made inappropriate sexual comments regarding Westbrook's breasts. Westbrook Dep. at 27; Response Mem. Ex. 32 ¶¶ 1-5 (Downs Affidavit).  As Kremple, hearing the comments, became upset and stated that he could not believe that Jenkins made the comments in front of him, Westbrook Dep. at 27, a reasonable jury could conclude that the Board had actual knowledge of the harassment as early as Nov. 2000.  From the record, it is not clear whether the Board took any action to stop Jenkins at that time.  Accordingly, Westbrook offers sufficient evidence for a reasonable jury to impute liability to Jenkins's employer, the Board, and thus to find that a hostile work environment existed.

C.  Retaliation

Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice . . . or because he has made a charge . . . under this subchapter."  42 U.S.C.A. § 2000e-3(a).

Under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework, which the Fourth Circuit applies to retaliation claims, a plaintiff has the initial burden of proving a prima facie case of retaliation.  *E.E.O.C. v. Navy Federal Credit*

*Union*, 424 F.3d 397, 405 (4th Cir. 2005).  If the plaintiff carries this burden, then the burden shifts to the defendant, who must "articulate a legitimate, non-retaliatory justification for the adverse employment action." *Id*.  Should the defendant carry this burden, the burden shifts to the plaintiff to then "demonstrate that the non-retaliatory reason advanced by the defendant is a mere pretext." *Id*. (citations omitted).

The prima facie case for retaliation requires Westbrook to show that: (1) she engaged in protected activity; (2) an adverse employment action was taken against her; and (3) there was a causal link between the protected activity and the adverse employment action. *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004).  There is no dispute that Westbrook was terminated in December 2002.  Although there is some question as to when Westbrook filed an EEO complaint, it is clear that Johnnie Jackson, the EEO Officer, at some point between January 2002 and April 2002 began investigating her allegations of sexual harassment against Jenkins.  Westbrook Dep. at 81; Response Mem. Ex. 29 at 8 (Deposition of Johnnie Jackson).  Accordingly, only the third element of the prima facie case is at issue here.

Evidence of a close time between the protected activity and the adverse employment action "satisfies the less onerous burden of making a prima face case of causality." *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) *(citing*

10

*Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)(termination after the employer became aware of the filing of the discrimination charge was sufficient)).  However, "a lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action negates any inference that a causal connection exists between the two."  *Miles v. Dell, Inc.*, 429 F.3d 480, 490 (4th Cir. 2005).

Westbrook was placed on administrative leave on March 25, 2002, recommended for termination on April 22, 2002, Mem. Supp. Mot. Ex. 10 (April 22, 20002 letter from Cornell S. Brown, Jr., to Westbrook) (the "April 22 Letter"), and ultimately terminated on December 6, 2002.  Jackson began investigating her complaint against Jenkins sometime between January 2002 and April 2002.  It is not clear from the evidence whether Jenkins knew of the complaint against him, but as Jenkins became her supervisor in March 2002, the timing presents a question of material fact as to causality.  Accordingly, Westbrook has satisfied her burden of proving the prima facie case.

In response, the Board asserts that work performance issues, not Westbrook's gender, caused her termination.  The Board argues that as a fingerprint technician, Westbrook received and had control over confidential information and her failure to maintain that confidentiality prompted her discharge.  The Board offers significant evidence supporting these reasons.  April 22 Letter

11

(outlining the breaches of confidentiality leading to the recommendation of termination); Mem. Supp. Mot. Ex. 13 (July 19, 2002 written decision by Randall Grimsley, Executive Director of Human Resources for the Board)(recommending her termination for breaching confidentiality and other misconduct based on a May 10, 2002 hearing and June 20, 2002 meeting); Mem Supp. Mot. Ex. 14 (November 22, 2002 letter from Christine M. Johns, Deputy Superintendent for Curriculum and Instruction to Westbrook)(reaffirming that termination is appropriate because of her breaches in confidentiality).

In response to the Board's articulation of a legitimate non-retaliatory reason for Westbrook's termination, Westbrook offers that Jenkins himself swore that: (1) Westbrook had a better than average work record, Response Mem. Ex. 28 at 48 (Jenkins Deposition); (2) she was a good employee, *id*. at 60; and (3) he had no reason to fire her, *id*. That she was placed on administrative leave after no prior work related problems and within a month of Jenkins becoming her supervisor raises a genuine issue of material fact as to whether the proffered reason for her termination was pretextual.

D.   Punitive Damages

The Board has moved for summary judgment on Westbrook's requested remedy of punitive damages and Westbrook has omitted any challenge on this issue from its Response Memorandum. 42

U.S.C. § 1981a permits Title VII plaintiffs to recover punitive damages if they can prove that their employer acted "with malice or with reckless indifference to their federally protected rights." *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 548 (citing 42 U.S.C. § 1981(b)(1)).  The statute precludes recovery of punitive damages from governments, government agencies, and political subdivisions.  42 U.S.C. § 1981a(b)(1).  As Westbrook does not dispute the applicability of this subsection to the Board and the Board is a government entity created under Maryland law, Md. Code Ann., Educ. § 3-103, Westbrook's request for punitive damages will be stricken.

III. Conclusion

For the reasons discussed above, Count I and II will be treated as a single hostile work environment claim and the motion for summary judgment will be denied as to those counts and as to Westbrook's retaliation cause of action.  Westbrook's request for punitive damages will be denied.

March 6, 2007                                    /s/
Date                             William D. Quarles, Jr.
                                 United States District Judge

13